## LACK OF VIGILANCE ON THE PART OF A MOTORMAN.

### Circuit Court of Hamilton County.

THE INTERURBAN RAILWAY & TERMINAL COMPANY v. FREDERICK J. TREUHEIT.

Decided, July 24, 1909.

*Negligence—Motorman Injured in Collision—Lack of Caution on His Own Part—Verdict in His Favor not Sustained by the Evidence.*

A motorman is lacking vigilance and caution who leaves a meeting point on the assumption that, because he saw there the regular crew of the car he was to meet, therefore the car must have arrived, when as a matter of fact the approaching car was not in charge of its regular crew on that day; and he can not recover · from the company for injuries sustained in the resulting collision.

*Frank F. Dinsmore,* for plaintiff in error.
*C. S. Schneider* .and *James E. Robinson,*. for Treuheit.

The defendant in error, plaintiff below, while employed as a motorman by the railway company, was severely injured in a collision, due to the fact that he left the car barn under the impression that the car which he was scheduled to meet at that point had arrived, whereas the regular crew on the approaching

car, whom he saw at the car barn, were not on that run on that
day. . The jury gave him a verdict of $3,500.

SMITH, J.; GIFFEN, P. J., and SWING, J., concur.

The main ground of error urged and relied upon in the above
case is that the verdict and judgment of the trial court is not
sustained by sufficient evidence.

We are of the opinion that his objection is well taken and that
the judgment should be set aside.

Treuheit was due at Coney Island barn at 7:20 A. M. on the
morning of the accident where he was to wait, meet and pass
run No. 1, the car from Bethel, which reached the barn at 7:22.

It therefore made no difference to him, as was testified,
whether the car upon which Thornton and Baker were motor-
man and conductor, was an extra car or not. The schedule in
this regard had not been changed, and while the evidence is con-
flicting as to the matter of orders between the dispatcher and
the conductor, yet under rule 27 issued by the company it was
the duty of the motorman to be vigilant and cautious and not
depend entirely upon the signals, brakes, or rules of the company
for safety, and therefore we do not think that he could or should
have relied upon the fact that he saw Purcell and Newton, who
usually had this run, at the barn, to absolve himself from his
own neglect, if in leaving the barn before the car from Bethel
arrived, he afterwards collided with it. The evidence shows
that crews are often changed and new men placed upon runs,
and it would seem that the schedule as adopted by the company
should control.

Further, we are of the opinion that after leaving the Coney
Island barn the testimony shows that by the exercise of ordinary
care and prudence he could and ought to have discovered the
presence of the car from Bethel in time to have avoided the col-
lision. He was going on an up grade at about six miles an hour
and saw the roof of the approaching car some distance ahead of
him but failed as we think the evidence discloses to have exer-
cised the ordinary care and prudence he should, for while he
testifies he reversed the motor, yet there is strong evidence that
he was not giving the attention he should to the movement of the

car, and that after the accident an examination of the controller showed the reverse handle was in the position of going ahead, running east.

It is unnecessary in this view of the case to consider other errors assigned, and as the judgment of the court below is not sustained by sufficient evidence the same is reversed.